Nicole M. WAGNER, Plaintiff–Appellant,

v.

Jeffrey M. PIEHLER, M.D., Mid America Thoracic and Cardiovascular Surgeons, P.C., Eric M. Thompson, M.D., and St. Luke's Hospital of Kansas City, Defendants–Respondents.

No. WD 48722.

Missouri Court of Appeals, Western District.

July 19, 1994.

---

3. MAI 17.05.

4. MAI 17.04.

James C. Welch, Robert G. Herndon, Overland Park, KS, for appellant.

J. Michael Shaffer, Gregory P. Forney, Kansas City, for respondents Jeffrey M. Piehler, M.D., Suchint Wathanacharoen, M.D. and Mid–America Thoracic.

Thomas Wagstaff, Michael J. Furlong, Blackwell Sanders Matheny Weary & Lombardi, Kansas City, for respondents St. Luke's Hosp. and Eric M. Thompson, M.D.

Before TURNAGE, C.J., and FENNER and HANNA, JJ.

TURNAGE, Chief Judge.

Nicole M. Wagner brought suit against Jeffrey M. Piehler, M.D., Mid–America Thoracic and Cardiovascular Surgeons, P.C., Eric M. Thompson, M.D. and St. Luke's Hospital of Kansas City for medical malpractice. A jury returned a verdict in favor of the defendants. Nicole contends the court erred in excluding expert opinions, in sustaining a motion in limine, failing to remove a juror, and in making improper comments toward her counsel. Affirmed.

Nicole was required by her employer in Hiawatha, Kansas to have a chest x-ray. The x-ray revealed a tumor on the chest wall and although her physician thought the tumor was benign, he referred her to a specialist to have it removed. Nicole was referred to Dr. Piehler in Kansas City. Dr. Piehler suggested that he could remove the tumor without making a long incision by entering the chest under her right armpit. In August 1989 Drs. Piehler, Thompson and Wathanacharoen performed the surgery at St. Luke's in Kansas City. Following the surgery Nicole was unable to raise her right arm above her shoulder and complained of weakness in her arm. These complaints were consistent

with what Nicole had been advised she would experience following surgery.

In December 1989, or early January 1990, a co-worker at Sonic Drive-In told Nicole that something was sticking out of her back. Nicole thought this was simply a joke. However, in February 1990 Nicole was in a motel with her mother and her mother observed her shoulder blade prominently extending out from Nicole's back.

Nicole returned to see Dr. Piehler who examined her and referred her to a neurologist. A diagnosis was made of a winging of the scapula caused by a damaged long thoracic nerve.[1]

Physical therapy failed to improve Nicole's condition and in early October 1990 she went to the Mayo Clinic. Physicians at the Mayo Clinic recommended a second surgery to try to return the scapula to its proper position. The surgery was partially successful but some winging of the scapula continues.

During trial the parties agreed that the medical records of Nicole from the Mayo Clinic could be admitted under the Uniform Business Records as Evidence Act with the right of the defendants to object to the irrelevant or immaterial portions.

It was agreed at trial that the winging of the scapula was the result of an injury to the long thoracic nerve. The issue tried was whether or not the thoracic nerve was injured during the surgery.

Nicole took a discovery deposition from Dr. Michael B. Wood, an orthopedic surgeon at the Mayo Clinic, in which Dr. Wood stated that with a reasonable degree of medical certainty he believed the surgery caused the winging of Nicole's scapula. When Dr. Wood's evidentiary deposition was taken, he stated that he based his opinion that the injury to the long thoracic nerve was caused by the surgery on the history he had taken from Nicole which indicated that the winging occurred very shortly after surgery. Dr. Wood indicated that if the winging did not occur until some months after surgery, the surgery was not the cause.

At trial Nicole attempted to read into evidence an answer which Dr. Wood made in the evidentiary deposition in which he stated that he relied upon the history given to him by Nicole and based upon that history it was his opinion that the winging was due to the surgery. On objection that there was no foundation for Dr. Wood to express an opinion as to the cause of the injury, the court excluded the answer.

Nicole contends that the physician was entitled to express an opinion based upon his examination of Nicole and his experience and training. Nicole overlooks the fact that Dr. Wood expressly stated that his opinion was based on the history which he took from Nicole in which Nicole told him that the winging occurred shortly after the surgery. Contrary to what Nicole had told Dr. Wood, she testified at trial that the first time she noticed the winging was in February 1990 when her mother called it to her attention.

This resulted in Nicole attempting to introduce a medical opinion which was not based on facts in evidence because all of Nicole's evidence indicated that the winging did not appear until four to six months after the surgery.

Further, Nicole's argument misses the mark because the critical element in Dr. Wood's opinion was the time of the appearance of the winging in relation to the surgery. An examination of Nicole coupled with Dr. Wood's knowledge and experience could not give him any information on that fact. He could only rely on the history which Nicole had given him to establish the time the winging appeared.

In reviewing Dr. Wood's testimony, it is clear that he expressed his opinion that the surgery caused the winging based on Nicole's statement to him that the winging occurred shortly after surgery.

In *White v. American Republic Ins. Co.,* 799 S.W.2d 183, 193[19–21] (Mo.App.1990), the court stated:

> shoulder blade in this position could be thought to resemble a wing.

1. "Winging of the scapula" is a term used to describe a shoulder blade which extends out from the back. This term is used because a

A doctor's opinion, like that of any expert, is in the nature of a conclusion of fact, but it must have a substantial basis in the facts actually established, and such opinion cannot be invoked to establish the facts.

The court correctly excluded Dr. Wood's opinion that the winging was related to the surgery because such opinion was based on a fact not in evidence—that the winging appeared shortly after the surgery.

■ Nicole next contends that the court erred in excluding portions of the Mayo medical records of Nicole which contained opinions of Dr. Wood and Dr. Daube, a neurologist. The opinion of Dr. Wood contained in the medical records is based on the history given by Nicole that the winging appeared shortly after the surgery. For the reason just stated above, that opinion lacked a foundation in facts in evidence and was not admissible.

■ Nicole contends that a neurological record written by Dr. Daube should have been admitted in evidence. In that record Dr. Daube stated the history of Nicole's surgery and that her mother noticed the prominence of her shoulder blade in January 1990. He stated EMG testing revealed severe damage to the long thoracic nerve. He set out the results of his examination which were normal except for the severe weakness of the right shoulder blade. Under the "impression" portion of the report, Dr. Daube wrote "severe thoracic nerve neuropathy, likely due to trauma in surgery." The neurological record did not contain any reasons or facts which led Dr. Daube to write his impression that the long thoracic nerve injury was likely secondary to trauma in surgery.

The neurological record did not indicate that Dr. Daube had the opinion that the surgery caused the thoracic nerve neuropathy with a reasonable degree of medical certainty. For that reason the record is insufficient to be admissible as expert medical testimony. *Holmes v. Gamewell,* 712 S.W.2d 34, 37[7] (Mo.App.1986). The court correctly excluded the neurological record from evidence.

■ Nicole contends that because the neurological record is contained in business records which were admitted in evidence the record containing Dr. Daube's impression was admissible. In *Stewart v. Sioux City & New Orleans Barge Lines, Inc.,* 431 S.W.2d 205, 211 (Mo.1968), the court held that a statement contained in uniform business records "does not make admissible in evidence that which otherwise would not be admissible." Thus, the fact that Dr. Daube's impression was contained in business records which had been admitted in evidence does not make the impression admissible.

Prior to trial the court sustained a motion in limine filed by the defendants to exclude any reference by Nicole's expert, Dr. Golding, to x-rays which Dr. Golding had examined. Nicole had requested that all x-rays taken of her back which were in the defendants possession be produced. The x-rays were delivered prior to the trial and on the day of trial Nicole informed the defendants that Dr. Golding would give an opinion that x-rays taken soon after the surgery revealed a winging of the scapula. The defendants filed a motion in limine to exclude this opinion because of undue surprise. The court stated that it was sustaining the motion. During trial Nicole never attempted to introduce the opinion of Dr. Golding regarding the x-rays nor did she make an offer of proof outlining such evidence. Nicole says she was not required to make an offer of proof because the court knew her position and it was futile to make an offer of proof.

The court faced a similar situation in *Eckert v. Thole,* 857 S.W.2d 543, 546[4–6] (Mo. App.1993). In that case the court sustained a motion in limine prohibiting the plaintiff from introducing an ordinance in evidence. Plaintiff's attorney made no attempt at trial to offer the ordinance but later complained on appeal that the court had erred by sustaining the motion in limine. The court held that a "ruling on a motion in limine is interlocutory in nature and not appealable." The court further held that it was necessary for an offer of proof to be made at trial to demonstrate why the evidence was relevant and admissible and to preserve the issue of the exclusion of evidence for appeal. The court held that it could not convict the trial court of error when no offer of proof had been made at the trial.

The same situation exists here in that Nicole never made an attempt to introduce Dr. Golding's opinion in evidence. The basic flaw in Nicole's argument is that she is appealing from the ruling on the motion in limine. A ruling on such a motion is interlocutory and not appealable. Thus, Nicole has no ground on which to appeal from a ruling on a motion in limine. Beyond that, Nicole failed to make an offer of proof which further deprives her of any ground on which to complain about the court's ruling.

Nicole next contends that the court failed to remove a juror just prior to the jury being given the case. A juror approached the bailiff before the jury was to receive the case on Friday night and told him that she had made up her mind about the case and there was no reason for her to listen to final arguments. A possible explanation is that the juror had a social engagement on Friday night and wanted to be able to leave. The matter was drawn to the court's attention and the court stated that if both parties agreed, the juror would be replaced by an alternate. The defendants did not agree and the court did not remove the juror. Nicole made no objection to the case proceeding and asked for no relief.

It is well settled that a claim of error will not be considered by an appellate court in a civil appeal unless it was presented to and decided by the trial court. *In re Marriage of Wardlaw*, 809 S.W.2d 470, 473[4–6] (Mo.App.1991). Further it was stated in *Baumgartner v. Bi–State Dev. Agency*, 811 S.W.2d 63, 65[3] (Mo.App.1991):

> Plaintiff's failure to object constitutes a waiver of her allegation of error. A party who witnesses misconduct or error and decides to play a game of chance, cannot later object to the alleged misconduct or error if the result later proves unfavorable.

Both of these rules preclude a review of this contention of error.

Nicole finally contends that the trial court made comments at trial directed at her counsel which showed a lack of impartiality and denied Nicole a fair trial. Again no objection was lodged with the trial court about the alleged comments and no relief was requested. For the reasons stated in *Wardlaw* and *Baumgartner*, Nicole has not preserved anything for review.

The judgment is affirmed.

All concur.