STATE of Missouri ex rel. Morton G. CAPPS, Appellant,

v.

George F. BRUNS, License Inspector for the City of St. Joseph, Missouri, Garth Landis, Stanley Kizior, James F. Welsh, John W. Beaumont and John E. Rupp, as Members of the Common Council of the City of St. Joseph, Missouri, and the City of St. Joseph, Missouri, a Municipal Corporation, Respondents.

No. 23524.

Kansas City Court of Appeals. Missouri.

Feb. 4, 1962.

Dale, Potter & Flynn, St. Joseph, for appellant.

Joseph G. Wood, J. Harley Thompson, St. Joseph, for respondents.

MAUGHMER, Commissioner.

Relator seeks a writ of mandamus directing that a city license to operate a junk business be issued to him by the City of St. Joseph, Missouri. The trial court issued its alternative writ. Thereafter defendants filed a motion to quash, based upon an assertion that plaintiff's petition "did not state facts sufficient to entitle him to the relief prayed for therein". The Court sustained this motion and entered judgment for defendants. Plaintiff has appealed.

No evidence was heard by the trial court. Therefore we examine and consider the allegations of the petition. If, assuming all such allegations are true, plaintiff is patently not entitled to the writ, the judgment should be affirmed. Otherwise, it must be either reversed outright or remanded for further proceedings, including possibly the hearing of evidence.

St. Joseph is a city of the first class. It is authorized, acting by and through its Common Council, to pass zoning laws and to regulate, tax and license various businesses, including "junk yards". Sec. 73.110, (17), (21), V.A.M.S.

Plaintiff, Morton G. Capps, is a resident and citizen of St. Joseph. About the year 1940, he began the operation of a junk business located at 1220 Grand Avenue in St. Joseph. Since his petition alleges that at all times he lawfully operated such business, we must assume he was in compliance with all regulatory and licensing requirements unless from the pleadings it appears otherwise.

■ It is not denied that plaintiff operated his junk yard in full and complete compliance with all lawful requirements from 1940 until 1949, when his location was zoned for two-family dwellings. Therefore, his use of the property thereafter as a junk yard constituted a nonconforming use under the zoning ordinances. However, such use was not unlawful. "The general rule is that nonconforming structures and uses existing at the time of the effective date of a zoning ordinance or restriction may be continued". McQuillin, Municipal Corporations, 3d Ed., page 464. Such use and the operation of such a business was continuance of a vested right of which the city could not deprive plaintiff. See Brown et al. v. Gambrel et al., Mo., 213 S.W.2d 931, 935. In addition, General Ordinance 3162, Sec. 11–21, City of St. Joseph, squarely authorizes such continuing nonconforming use.

In Braun et al. v. McGillian, Sup., 40 N.Y.S.2d 791, the premises had been used for the slaughter and sale of poultry prior to the adoption of zoning ordinances which prohibited such continued use except upon the approval of the Board of Appeals. The Court ruled petitioner had the right to continue the business without approval of the Board.

In Campbell et al. v. Board of Adjustment of Borough of South Plainfield et al., 118 N.J.L. 116, 191 A. 742 (Sup.Ct.N.J.) plaintiff was the operator of a filling station. His property was zoned as residential. He leased to another, who for five months operated the filling station and then the premises were idle. It was held that

plaintiff was still entitled to continue his nonconforming use.

About July 15, 1960, plaintiff filed formal application for license to operate a "Junk Yard". On all crucial dates involved here there was in full force and effect various city ordinances regulating junk yards, providing that they be licensed, pay a license fee, file application therefor, secure the written approval of the City Fire Chief, and regulations as to buildings, fences, walls and reports. The petition alleges full compliance with all of these requirements.

The city ordinances require that the application, with the written approval of the Fire Chief and with a receipt for the license fee, all of which plaintiff had procured, shall be presented to the Common Council, which shall either reject or approve such application. The Council rejected plaintiff's application. No reason was assigned for the rejection by the Council and none was offered by defendants' pleading. On appeal it is suggested that licensing to operate a junk yard is a privilege and "is granted by the proper authorities not to everyone but to *selective persons*". This contention sounds both arbitrary and capricious. Manifestly, where a person is lawfully conducting a business in a certain area, he has a vested right to continue, even though such business use has become, by reason of changed zoning, a nonconforming use. To then say that the city, by the simple expedient of first requiring and then denying him a license, could destroy such vested right and put him out of business, would be absurd and unreasonable. Such is not the law.

Respondents, City License Inspector and the five members of the St. Joseph Common Council, have invited our attention to some selected cases which they assert justify their refusal to issue the license and show that the trial court was correct in denying the writ. We shall refer briefly to some of these cases.

City of St. Louis v. Baskowitz, 273 Mo. 543, 201 S.W. 870. This case merely holds the city has the power to license, regulate and tax junk and secondhand dealers, and that a requirement to keep an "inspection book" listing purchases is not an unreasonable regulation.

Lerner v. City of Delavan, 203 Wis. 32, 233 N.W. 608. Here the Supreme Court of Wisconsin ruled the city had the right to pass and enforce reasonable ordinances regulating junk dealers; that council was not vested with arbitrary power to deny license, but denial of an original application was justified because it would be offensive and dangerous in that particular location.

Paron et al. v. City of Shakopee, 226 Minn. 222, 32 N.W.2d 603, 2 A.L.R.2d 1227, has to do with license to sell liquor and the validity of ordinances limiting the number of such licensees. Dening v. Cooke, Mayor, 162 Misc. 723, 295 N.Y.S. 724. In this case the Supreme Court of New York affirmed denial of a junk yard license to plaintiff based upon proof he had one year before been convicted of purchasing junk from children under 16 years of age. Primm v. City of Reno et al., 70 Nev. 7, 252 P.2d 835, approves denial of gambling license in order to prevent spread of gambling into new areas of the city. Marchesi v. Selectmen of Winchester, 312 Mass. 28, 42 N.E.2d 817. Here the licensing body denied an original application to start a bowling alley in a new area close to residences. This was ruled to be neither arbitrary nor capricious.

None of these cases are in point on the issues here. In our case we have an applicant who for twenty years has conducted a junk yard at this particular location. He has a vested right which zoning ordinances could not abrogate. There is no proof, evidence, showing or suggestion that he is an improper person to conduct such a business or that his operation of it has been violative of law, city regulations or even of propriety.

Based upon the record we can see only one possible justification for refusing to is-

sue the license and that is plaintiff may have abandoned his nonconforming use. If he has, then the zoning restrictions apply to him as to anyone else in the area, and he is not entitled to be licensed.

In Paragraph 10 of plaintiff's petition it is alleged that "In 1954, the defendant City of St. Joseph, Missouri, by and through its officers, servants, agents and employees, without authority of law, did cause his classification to be changed and an occupation license to be issued to plaintiff as a Motor Vehicle Business, a more restrictive nonconforming use than that of a junk dealer, and new licenses issued under said amended classification". Plaintiff alleges further that at all times during the twenty years his business has been the same, namely, that of a junk dealer.

In McQuillin, Municipal Corporations, 3d Ed. page 492, we are told: "In truth, the abandonment of a nonconforming use ordinarily depends upon a concurrence of two factors: (a) An intention to abandon; and (b) some overt act, or some failure to act, which carries the implication that the owner does not claim or retain any interest in the subject matter". See also Chapter X–g–(5) Metzenbaum, Law of Zoning, 2d Ed., page 1263.

Many ordinances limit the life of nonconforming uses to a period of years and such ordinances have been approved. There are apparently no such "tolerance period" ordinances involved in our case.

In Lipsitz v. City of Baltimore, 219 Md. 605, 150 A.2d 259, it was held that the written record of police survey showing occupancy of the premises by only two families, and record of issuance of fire escape permit based on occupancy by two families, proved discontinuance of nonconforming five-family use, even though oral testimony to the contrary was given.

The Court of Appeals (Md.) in Dorman v. Mayor and City Council of Baltimore et al., 187 Md. 678, 51 A.2d 658, ruled that a nonconforming use for a junk business is abandoned or changed to a use for a higher classification where, after a fire in 1942, owner refused to restore the property pursuant to a lease of it, or to rent it, for a junk business, and rented part of it as a warehouse for three years, and made no other business use of the premises after the fire.

In Brown v. Gambrel, supra, appellants possessed a valid right to use the property as a riding academy and stable. They converted it and used it as a public dance hall. Our Supreme Court held this amounted to abandonment of the nonconforming use and said (213 S.W.2d pp. 935–936): "Now appellants did not have a right to effect a change that would expand the nonconforming use of their property, nor had they the right to alter and improve their non-conforming building so as to prolong the term of a non-conforming use, nor had they the right to reestablish the non-conforming use thereof, if discontinued, in view of the county's zoning plan, the ultimate purpose of which is to confine within established zones or districts all uses of similar classification, and the underlying spirit of which plan is to diminish and not to extend non-conforming uses".

While plaintiff here alleges that he continuously from 1940 to the present operated the same kind of business, that is, a junk yard, the fact remains that from 1954 through 1959, apparently he was licensed to operate a "Motor Vehicle Business" and he apparently accepted such a license without protest. If in truth and fact he intended to and did operate a different kind of business from 1954 through 1959, we would not likely interfere with a denial of a junk yard license predicated upon abandonment. But if he, as a matter of fact, has continuously operated a junk yard, we believe there has not been an abandonment of his vested right to this nonconforming use. We, on this appeal, must accept at par, plaintiff's assertion that for twenty years he has operated the same kind of

business—namely a junk yard. If evidence were heard it might show that such was or was not the fact. Plaintiff also asserts that the city officers "without authority of law" in 1954, changed his classification from "Junk Dealer" to "Motor Vehicle Business". It may be that plaintiff, on his own initiative, voluntarily sought such a changed classification and applied for and was granted the different type of license. On the other hand, it may be that the City License Inspector from 1954 through 1959, classified the operation as a "Motor Vehicle Business" and then in 1960, a new City License Inspector again classified it as a "Junk Yard" operation. It is our opinion that evidence might be procurable on these issues of fact, which would resolve or at least throw much light on them. We believe such evidence should be heard. It is also possible that evidence might be adduced as to other grave and sufficient reasons why this particular applicant should not be permitted to operate a junk yard at this specific location. These reasons would have to be such as would appeal to the sound and reasonable discretion of the Council and of the Court. The license should not be refused for reasons which are arbitrary and capricious, or for no reason at all.

It seems quite evident that in this matter plaintiff does not have an adequate remedy at law and if he is entitled to a license, mandamus should issue.

We are, therefore, constrained to reverse the order and judgment of the trial court sustaining the motion to quash, and remand the cause for further hearing and proceedings in accordance with this opinion, including hearing evidence on the question of abandonment and as to any other reasonable and discretionary reason for denying issuance of the license.

The judgment is reversed and the cause is remanded for further proceedings in accordance with and not contrary to this opinion.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.