Arthur A. CASTEEL and Sue
N. Casteel, Plaintiffs–
Respondents,

v.

Michael W. YEARY and Sharon Yeary,
Defendants–Appellants.

No. 24543.

Missouri Court of Appeals,
Southern District,
Division One.

June 20, 2002.

Ron Mitchell, Blanchard, Robertson, Mitchell & Carter, P.C., Joplin, for Appellants.

Robert B. Lee, Warten, Fisher, Lee and Brown, L.L.C., Joplin, for Respondents.

KENNETH W. SHRUM, Presiding Judge.

A dispute between Arthur and Sue Casteel ("Plaintiffs") and Michael and Sharon Yeary ("Defendants") about ownership of a small tract of land reaches this court via appeal by Defendants.[1] Plaintiffs claimed ownership of the land based on adverse possession, and the trial court ruled that Plaintiffs had proven each element thereof. Defendants' appeal maintains the trial court's judgment was not supported by substantial evidence. Specifically, Defendants claim that Plaintiffs failed to show their possession of the land was adverse because their use of the land was not exclusive, continuous, or hostile. We disagree. We affirm.

In 1983, Plaintiffs purchased Lot 5 of the Hollyhaven subdivision in Newton County, Missouri, from Art and Lynda Kohler ("Kohlers"). Another parcel, Lot 4 of the same subdivision, lies west of and adjacent to Lot 5. Defendants are record title holders of Lot 4, having purchased the same in 1998 from Lloyd and Shirley Stephens ("Stephens").

---

1. When referring to Arthur Casteel individually, we call him "Arthur." Collectively we refer to Arthur and Sue Casteel as "Plaintiffs."

A public road runs in a northeast/southwest direction across both Lots 4 and 5. The road divides Lot 5 so that the larger portion of Lot 5 lies south and east of the public road, whereas the road leaves only a small part of Lot 4 (a triangular piece measuring approximately 84 feet by 49 feet by 68 feet) south and east of the road. The subject of this suit is the triangular part of Lot 4 lying south and east of the public road (herein called "disputed tract").

Arthur testified that when he and his wife purchased Lot 5, they believed the disputed tract was included in the deal because Kohlers told them that Stephens were to make some sort of "trade" and convey the property to Plaintiffs. Operating upon the belief they owned the disputed tract, Arthur testified that beginning in 1983 and for more than ten years thereafter he and his wife continuously occupied both the disputed tract and that part of Lot 5 southeast of the public road for business and personal purposes.

More specifically, Arthur testified that he operated a repair business at this location and worked on small engines such as chain saws, weedeaters, and riding lawnmowers. He also painted cars at the site. A photograph (Exhibit 1) showed a metal shop building and a frame building, both of which appear to be on Lot 5. Other photographic exhibits confirmed Arthur's testimony that he had put a sign advertising his business on the disputed tract. According to Arthur, this sign had been in that location since 1983. On occasion, Arthur placed another "arrow" sign alongside the permanent sign to advertise his business. Moreover, Arthur identified a driveway shown in the photograph as one that was in place when he bought the property in 1983 and one that he had continuously used in connection with his business. Arthur testified that the driveway shown in

Exhibit 1 served both tracts and was located, at least in part, on the disputed tract. He also testified that he had maintained and used the disputed tract since 1983 in other ways, including putting several loads of fill dirt thereon, mowing the area, and parking automobiles thereon. As Arthur explained it, he used the disputed tract as a place to exhibit, advertise, and sell automobiles and other things he had for sale. Plaintiffs also adduced evidence that they had paid taxes on the disputed tract since 1984 and excluded others from use of the property without their consent.

The trial court found Plaintiffs had proven they owned the disputed tract property via adverse possession. Defendants appeal and claim Plaintiffs failed to show they adversely possessed the land because a neighbor ("Benson") mowed Lot 4 and built a driveway thereon, and Plaintiffs were using the land with the consent of the true owner (Stephens).

When determining the sufficiency of the evidence in an adverse possession case, we must view the evidence and all reasonable inferences in the light most favorable to the judgment and disregard all contrary evidence and inferences. *Conaway v. Faulter*, 972 S.W.2d 442, 444 (Mo. App.1998). We will affirm the judgment unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Id.*

Plaintiffs had the burden to prove each element of adverse possession to establish title. *Meyer v. Lipe*, 14 S.W.3d 117, 120[9] (Mo.App.2000). To establish title by adverse possession, the preponderance of the evidence must prove the possession was: (1) hostile; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous for a period of ten years. *Conaway*, 972 S.W.2d at 444[2]. The claim of adverse possession will fail if even one of

the elements is not proven. *Shoemaker v. Houchen,* 994 S.W.2d 40, 48 (Mo.App. 1999).

    In their first point on appeal, Defendants allege Plaintiffs failed to prove that possession of the property was exclusive. Specifically, Defendants claim there was evidence showing that Benson mowed the disputed tract and built a driveway thereon; consequently, they allege Plaintiffs' use of the land was not exclusive as a matter of law.[2] However, Plaintiffs provided contrary testimony.

Arthur testified he and his wife mowed the property and Benson did not do so. At most, Arthur conceded Benson may have turned his mower around on the disputed tract on occasion. The trial court was free to believe Plaintiffs' evidence that Benson did not mow the disputed tract, or could have disbelieved Defendants' evidence on this subject even if uncontradicted. *Conaway,* 972 S.W.2d at 445[8]. This part of Defendants' first point is meritless.

    As to the "driveway" contention, Arthur conceded that Benson put some poles and gravel on part of the disputed tract, but also testified he consented to this because Benson was his neighbor. Moreover, Arthur testified that Benson never used that portion of the disputed tract as a driveway. Exclusive possession means that the claimant must show that he or she held possession of the land for himself or herself, as his or her own, and not for another. *Walker v. Walker,* 509 S.W.2d 102, 106 (Mo.1974). The claimant must show the exclusion of the owner for the requisite period of time, but mere sporadic use by others will not defeat an adverse possession claim. *Machholz-*

*Parks v. Suddath,* 884 S.W.2d 705, 708[4,5] (Mo.App.1994). The placing of poles and gravel on the property by Benson, standing alone, is insufficient to defeat the claim of exclusivity. The "driveway" was never used, and the poles and gravel were put there with Plaintiffs' consent. Evidence about the alleged use by Benson of the disputed tract is insufficient to defeat Plaintiffs' adverse possession claim. Point denied.

    In Point II, Defendants argue that Plaintiffs' adverse possession claim failed because:

> "When [Defendants] received the property by Warranty Deed dated November 16, 1998 . . . any claim for adverse possession had already been broken because [Plaintiffs] no longer occupied the premises in question nor the premises adjacent to the premises in question."

This court wholly fails to understand Defendants' allegations in this regard. Apparently, Defendants are arguing that the possession must be continuous for the ten years *immediately* preceding the suit. Any such argument is without merit.

    "The ten years of possession must be consecutive, although they need not immediately precede the date of the suit to quiet title." *Conduff v. Stone,* 968 S.W.2d 200, 203[4] (Mo.App.1998). Title to the property will vest in the adverse possessor when the ten-year period lapses. *Whites v. Whites,* 811 S.W.2d 844, 847 (Mo.App.1991). Plaintiffs began their possession in 1983, and all the other elements of adverse possession were present at least until 1998; consequently, the title to the

---

**2.** The "Benson" driveway is not the one shown in Exhibit 1, i.e., it is not the one that served Plaintiffs' business location. The "Benson" driveway ran east and west and was located, at least in part, on the south side of the disputed tract. The driveway shown in Exhibit 1 that served Plaintiffs' business ran north and south and was located, in part, on the east side of the disputed tract.

disputed tract vested in them ten years after 1983. On this record, whether Plaintiffs occupied the disputed tract after 1998 is of no consequence. This follows because there was sufficient substantial evidence to support a finding that title to the disputed tract vested in Plaintiffs before 1998. Point denied.

In their final point on appeal, Defendants allege the adverse possession was not "hostile and under claim of right" because Plaintiffs used the disputed tract with the permission of the true owner (Stephens). Stephens was not called at trial, and Defendants attempt to support this argument by pointing to evidence of an alleged admission by Arthur at trial as follows:

"Q: [Stephens] didn't have any objection to you going on that property either, isn't that right?

"A: No. Stephens never did cut on my property.

"Q: Right. He didn't have any objection to you going on his property?

"A: I don't think so, no."

This ambiguous comment is not sufficient to support Defendants' point. We are confirmed in this view by testimony that Stephens never gave Plaintiffs permission to use the property, nor said anything at all to Plaintiffs regarding the use of the disputed tract. Hostile possession means an assertion of ownership contrary to that of others and does not necessarily imply ill will or acrimony. *Conaway*, 972 S.W.2d at 444[3]. It is the intent to possess that controls, not the intent to take the property away from the true owner. *Id.* at 444[4]. Stephens' silence in the face of all of Plaintiffs' claims and acts of ownership including paying taxes, improving and maintaining the land, using it for their business, and the exclusion of others is insufficient to defeat the hostility element. Point denied.

The judgment of the trial court is affirmed.

MONTGOMERY, J., and BARNEY, C.J., CONCUR.