**Walt MARTENS and Wanda Martens, Plaintiffs–Respondents,**

v.

**Mark WHITE and Lori Bender, Defendants–Appellants.**

**No. 27138.**

Missouri Court of Appeals,
Southern District,
Division One.

July 13, 2006.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

Patricia J. Shilling, The Styron Law Firm, Ozark, MO, for appellants.

Paul F. Sherman, Mann, Walter, Bishop & Sherman, P.C., Springfield, MO, for Respondents.

GARY W. LYNCH, Judge.

Respondents Walt and Wanda Martens, husband and wife ("Respondents"), filed a petition in the Circuit Court of Christian County against Appellants Mark and Lori White (a/k/a Lori Bender), husband and wife ("Appellants"), seeking to quiet title by adverse possession to a 13.672–acre parcel of property ("Contested Property") and seeking injunctive relief from continuing trespass. In accordance with a jury verdict, a judgment was entered in favor of the Respondents. Appellants timely filed a Motion for Judgment Notwithstanding the Verdict and a Motion for New Trial, which were both overruled. Appellants then filed this appeal of the Order and Judgment Quieting Title, alleging that the trial court committed four errors. We affirm.

## 1) Factual and Procedural Background

In early 1973, John Newby, a realtor for MacGowan and Company, showed the Respondents a tract of land in Christian County, Missouri. This property consisted of a house and land upon which Newby had personally hunted and cut wood. Newby told Respondents that the legal description was for 172 acres, but that the actual boundary of the land being offered for sale extended beyond that described in the legal description east to the fence which was the actual property line and which included the Contested Property. Respondents signed a contract to purchase the land on March 28, 1973, with an understanding that a survey was to be obtained before closing. Closing occurred on June 15, 1973, and Respondents were provided with a survey prepared by Christian County Surveyor, Henry Kessinger. Kessinger also provided them with an "Affidavit of Adverse Possession." Both the survey and the affidavit included the Contested Property. These were provided at the request of the Respondents, who had asked Newby to correct the description of the land as a condition of their purchase.

After closing, Respondents lived on the property and used the land over to the east fence. Respondents pastured horses

and raised sheep on the land and also maintained and improved the east fence. Respondents let many people use their land for hunting and posted "no trespassing" signs around the property, including on the east fence, in order to keep uninvited persons off the land.

At the time Respondents purchased their land in 1973, the property immediately to the east of and adjacent to Respondents' land was owned by Mr. and Mrs. Baker. The Bakers later sold this tract to Mr. and Mrs. Goossen, who thereafter sold it to Mr. and Mrs. Bilyeu. Although the legal description in each of the deeds by which the Bakers, Goossens, and Bilyeus obtained title included the Contested Property, these owners of the adjacent property in fact recognized Respondents' east fence as the boundary between the two adjoining parcels and never indicated or caused any problem with that boundary.

In 1990, Appellant Mark White purchased this land from the Bilyeus. The legal description in the deed from the Bilyeus to White included the Contested Property. No title search was conducted before the transfer of property from the Bilyeus to White. Marvin Allen, an expert in certifying chains of title, examined the chain of title and testified at trial that the Kessinger Affidavit of Adverse Possession was duly recorded in 1973 and appeared in the chain of title to White's property.

In 2004, Respondents started logging on the Contested Property. Appellant Mark White stopped the loggers and then began making phone calls to Respondents regarding the land. In April of 2004, Respondents noticed a portion of the east fence had been cut down, and they were unable to put their sheep out. Respondents then filed this lawsuit.

This matter was tried to a jury over the course of three days. The jury returned its verdict in favor of the Respondents and against Appellants on Respondents' claim of adverse possession and trespass, for which they assessed damages at $837.50. The trial court thereafter entered its Order and Judgment Quieting Title. Appellants timely filed a Motion for Judgment Notwithstanding the Verdict and a Motion for New Trial, which were both denied by the trial court. Appellants then timely filed this appeal asking for relief from the Judgment, alleging four errors by the trial court.

## 2) Sufficiency of the Evidence

In their first point on appeal, Appellants argue that the trial court erred in failing to grant Appellants' Motion for Judgment Notwithstanding the Verdict ("JNOV") because there was not sufficient evidence to support the jury's verdict. Appellants argue that Respondents (who were the plaintiffs in the trial court) failed to prove that they maintained actual, hostile, open and notorious, exclusive, or continuous possession of the Contested Property for at least ten years prior to the filing of the lawsuit.

### a) Deficient Point Relied On

 In this point relied on, Appellants actually complain of five alleged errors, in that they contend that there is no substantial evidence to support any one of the five elements necessary for adverse possession. Each point should contain only one allegation of error. Grouping multiple contentions about different issues together into one point relied on is a violation of Rule 84.04(d).[1] *In the Interest A.H.*, 963 S.W.2d 374, 379 (Mo.App.1998),

**1.** All references to Rules are to Missouri Supreme Court Rules 2006, unless otherwise

indicated.

*overruled on other grounds by State ex rel. Stubblefield v. Bader,* 66 S.W.3d 741 (Mo. banc 2002). Appellate courts are not obligated to review an appeal on the merits when the brief violates the requirements of Rule 84.04 and may dismiss the appeal. *Weisenburger v. City of St. Joseph,* 51 S.W.3d 119, 125 (Mo.App.2001). However, "the procedural rules are to be liberally construed to promote justice and minimize the number of cases disposed of on technical grounds." *Geiersbach v. Blue Cross/ Blue Shield of Kansas City,* 58 S.W.3d 636, 639 (Mo.App.2001).

 This Court has the discretion to review an appeal on the merits even when various parts of the brief do not comply with Rule 84.04. *Gray v. White,* 26 S.W.3d 806, 816 (Mo.App.1999). The points relied on should "state briefly and concisely what actions or rulings of the court are challenged and why, in the context of the case, the legal reasons identified support the claim of reversible error." *Stickley v. Auto Credit, Inc.* 53 S.W.3d 560, 562 (Mo. App.2001). As we are able to discern Appellants' claims of error, we choose to review those claims, in spite of the fact that the point relied on is deficient. *Gray,* 26 S.W.3d at 816.

### b) Standard of Review

 The standard of review of the trial court's denial of a motion for judgment notwithstanding the verdict and a motion for a directed verdict is essentially the same. *Maldonado v. Gateway Hotel Holdings, L.L.C.,* 154 S.W.3d 303, 307 (Mo. App.2003). Upon review, this Court must determine whether Respondents made a submissible case. *Id.* "This Court takes the evidence in the light most favorable to the verdict, giving the prevailing party all reasonable inferences from the verdict and disregarding the unfavorable evidence." *Nemani v. St. Louis University,* 33 S.W.3d 184, 185 (Mo. banc 2000). When

reasonable minds can differ on the questions before the jury, we will not disturb the jury's verdict, and judgment notwithstanding the verdict is not appropriate. *Echard v. Barnes–Jewish Hospital,* 98 S.W.3d 558, 565 (Mo.App.2002). We "will reverse the jury's verdict for insufficient evidence only where there is a complete absence of probative fact to support the jury's conclusion." *Giddens v. Kansas City Southern Ry. Co.,* 29 S.W.3d 813, 818 (Mo. banc.2000); *LaRose v. Washington University,* 154 S.W.3d 365, 369 (Mo.App. 2004).

### c) Elements of Adverse Possession

Section 516.010, RSMo 2000 reads, in part:

> No action for the recovery of lands, tenements or hereditaments, or for the recovery of the possession thereof, shall be commenced, had or maintained by any person ... unless it appear that the plaintiff, his ancestor, predecessor, grantor or other person under whom he claims was seized or possessed of the premises in question, within ten years before the commencement of such action.

 "Under this statute, a party claiming ownership by adverse possession must prove that their possession is: (1) hostile, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous for the ten-year period prior to the commencement of the action." *Harness v. Wallace,* 167 S.W.3d 288, 291 (Mo.App.2005). Appellants claim that Respondents did not provide sufficient evidence on any of the elements to support the jury's verdict. We disagree and deny point one.

### i) Actual Possession

 Actual possession is the present ability to control the land and the intent to exclude others from such control.

*Dobbs v. Knoll,* 92 S.W.3d 176, 180–81 (Mo.App.2002). "What acts will characterize possession as 'actual' depend on the nature and location of the property, the uses to which it can be applied and all the facts and circumstances of a particular case." *City of South Greenfield v. Cagle,* 591 S.W.2d 156, 160 (Mo.App.1979). The actual possession element of adverse possession is less strict for wild, undeveloped land than it is for developed property, because the nature, location and potential uses for the property may restrict the type of affirmative acts of ownership. *Luttrell v. Stokes,* 77 S.W.3d 745, 749 (Mo.App. 2002).

 Respondents presented evidence that they pastured sheep and ran horses on the Contested Property. Respondent Wanda Martens testified that she often sat on a bluff that was on the Contested Property to relax. Respondent Walt Martens testified that he maintained the east fence and made repairs on it as needed beginning in 1973 and thereafter. Respondents cut wood off the Contested Property to heat their home, and they logged the area twice. Respondents used the Contested Property in conjunction with the land for which they had legal title to live, work and engage in recreation. There was substantial evidence presented by the Respondents for a jury to conclude that Respondents exercised actual possession of the Contested Property beginning in 1973 and continuing thereafter.

### ii) Hostile Possession

 The hostile element is satisfied by a possession that is antagonistic to the claims of all others, with an intent to occupy the disputed land as one's own. *Weaver v. Helm,* 941 S.W.2d 801, 804 (Mo.App. 1997). Another definition of hostile is that a claimant's occupancy be in defiance of, rather than in subordination to, the rights of others. *Id.* at 805. A claimant's intent may be inferred from his or her acts of dominion over the land. *Flowers v. Roberts,* 979 S.W.2d 465, 469 (Mo.App.1998). In this situation, the evidence is that Respondents maintained and repaired the east fence on multiple occasions and posted "no trespassing" signs on the land, including on the east fence. This element is also supported by Respondents' requirement that Newby have the legal description corrected before the closing, giving rise to the Kessinger Survey and the Kessinger Affidavit of Adverse Possession. These actions demonstrate the Respondents' intent to occupy the Contested Property as their own and in defiance of and antagonistic to anyone else's rights. There was substantial evidence to support that Respondents' possession of the Contested Property was hostile and under a claim of right as early as 1973 and continuously thereafter.

### iii) Open and Notorious Possession

 The open and notorious element of adverse possession is satisfied by exercising visible acts of ownership on the disputed property. *Weaver,* 941 S.W.2d at 804. Maintaining and improving the property are examples of such visible acts of ownership. *Id.* "The reason for this requirement is to give the owner cause to know of the adverse claim of ownership by another." *Thomas v. B.K.S. Dev. Corp.,* 77 S.W.3d 53, 60 (Mo.App.2002). As discussed previously, the Respondents did maintain the land and repair the fence. Appellants claim that because neither they nor any of their predecessors ever saw Respondents on the land, that they did not meet the open and notorious requirement. However, Respondents filed the Kessinger Affidavit of Adverse Possession in the public real estate records of Christian County in 1973. This put subsequent owners of the Contested Property and the entire

world on notice of Respondents' intent to own the Contested Property and is an open and notorious act evidencing such. Therefore, this element is supported by substantial evidence.

#### iv) Exclusive Possession

"The fourth element is exclusive possession, which means that the claimant holds the land for himself and not for another." *Thomas,* 77 S.W.3d at 59. To meet this requirement, Respondents must have shown that they "wholly excluded" the owner from possession for the ten-year statutory period. *Flowers,* 979 S.W.2d at 470. However, sporadic use, temporary presence, or permissive visits by others, including the record owner, will not defeat the exclusive element. *Machholz–Parks v. Suddath,* 884 S.W.2d 705, 708 (Mo.App.1994). Respondents' burden is to show that the disputed land was neither open to the use of others nor jointly possessed with others. *Id.* In addition to the possessive acts already discussed, there was testimony that Respondents allowed several people to use their land for hunting. Also, the recognition by Appellants' predecessors in interest of the east fence as the boundary line between the adjoining properties, beginning as early as 1973 and continuing thereafter, supports the finding that Respondents' possession of the Contested Property was exclusive. Given these possessive acts and the display of "no trespassing" signs, there was substantial evidence to support the jury's finding that Respondents' possession was exclusive and was not overcome by Appellants or others periodically hunting on the property.

#### v) Continuous Possession

The fifth and final element of adverse possession is that the possession be continuous for the statutory period of ten years. *Flowers,* 979 S.W.2d at 470.

The ten years must be consecutive, uninterrupted, and without lapse. *Id.* However, it is not necessary that the ten years be the ten years immediately preceding the filing of the lawsuit. *Id.* Once the ten-year statutory period has run, the adverse possessor is vested with the title, and the record owner is divested. *Id.*

Appellants argue that Respondents never indicate for what period of time they possessed the Contested Property. However, uncontested evidence revealed that the Kessinger Affidavit of Adverse Possession was filed in 1973 when Respondents took possession of their home and the land which included the Contested Property. Respondents testified that they began using the Contested Property at that time and that their use of the land had not changed, even up to the time this litigation was commenced. Because the Respondents' actions of possession as previously discussed were consistent and continuous from the time they took possession of the land in 1973, Respondents would have been vested with title as early as 1983, and Appellants' predecessors in title would have, correspondingly, been divested of their title at that same time. This is well before Appellant Mark White purchased the adjacent property in 1990.

Appellants focused a large part of their evidence at trial and their argument in their brief on appeal on Appellants' actions and Respondents' alleged lack of actions regarding the Contested Property from the time that Appellant Mark White purchased the adjacent property in 1990 and thereafter. However, this evidence and argument does not have any bearing on whether or not the Respondents made a submissible case for adverse possession for a time period that concluded well before Appellant Mark White purchased his property. There is substantial evidence to support that Respondents' possession of the

Contested Property was continuous for the ten-year period immediately following their purchase of the land in 1973.

Finding that each element of adverse possession is supported by substantial evidence, point one is denied.

### 3) Jury Instruction

In Appellants' second point on appeal, they argue that the trial court erred in denying Appellants' Motion for New Trial because Jury Instruction Number 7 was confusing and misled the jury into finding for Respondents. The Appellants contend that the five elements of adverse possession set forth in instruction number seven should have been separated using the conjunction "and" rather than with commas as submitted to the jury.

#### a) Standard of Review

■■■ The question of whether or not a jury was properly instructed is a question of law. *Hosto v. Union Elec. Co.*, 51 S.W.3d 133, 142 (Mo.App.2001). In order for this Court to reverse a jury verdict on the ground of instructional error, it must appear that the offending instruction misdirected, misled, or confused the jury, resulting in prejudice to the party challenging the instruction. *Williams v. Fin. Plaza, Inc.*, 23 S.W.3d 656, 658 (Mo.App.2000). As such, it must be shown not only that an error occurred but that prejudice resulted. The party claiming instructional error has the task of showing "that the instruction as submitted misdirected, misled or confused the jury." *Hein v. Oriental Gardens, Inc.*, 988 S.W.2d 632, 634 (Mo.App.1999).

#### b) Discussion

■■■ If an applicable MAI[2] instruction exists, Rule 70.02(b) mandates its exclusive use. The parties in this case agree that there is no applicable MAI instruction. Therefore, the appropriate test for an instruction is governed by Rule 70.20(a), which requires that the instruction to be given be "simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." "An instruction not in the MAI, and therefore improvised, must conform to the theory of MAI: that the statement follow the substantive law and can be readily understood." *Piva v. Gen. American Life Ins. Co.*, 647 S.W.2d 866, 876 (Mo.App.1983).

■■■ The instruction as given to the jury read:

### Instruction 7

On the claim of Plaintiffs for adverse possession against Defendants your verdict must be for Plaintiffs if you believe:

For at least ten years prior to the filing of this lawsuit on May 14, 2004, Plaintiffs Wanda Martens and Walt Martens and their predecessors in title had and maintained the actual, open and notorious, exclusive, continuous and hostile possession under a claim of right in and to the land described in Plaintiff's Exhibit 17.

Respondents offered the instruction to which the Appellants objected. Appellants did not offer an alternative instruction.

Appellants support their contention of error by asserting that the conjunction "and" between each element is required to eliminate any confusion in the jurors' minds, and allowing the elements to be separated by commas opens the instruction up to two different constructions, *i.e.*, "continuous" and "hostile" are the last two elements in a list of five, versus "continuous and hostile" are a single element in a

---

**2.** Missouri Approved Instruction.

list of four. This argument has no merit. The latter construction is not supported by any grammatical rule of English of which we are aware, and Appellants cite us to none. In addition, Appellants fail to cite us to any authority supporting that the listing of the five elements using commas and the conjunction "and" before the last element as in instruction number seven is not proper, grammatically or otherwise.

Appellants' reliance on *Kirkendall v. Townsend*, 559 S.W.2d 561 (Mo.App.1977), is misplaced. *Kirkendall* addressed the issue of the failure to include the word "and" in a MAI instruction as mandated by MAI. The reasoning in *Kirkendall* is not applicable to a not-in-MAI instruction. We do not find instruction number seven to be erroneous. However, even if it was erroneous, such error would not require reversal, because Appellants have failed to demonstrate any prejudice.

Appellants argue that by using commas, it misled the jury into reaching their verdict and that the "possibility of juror confusion is substantial." However, Appellants offer no substantive proof, citation to authority, or reasoned argument for this allegation. The trial court provided the jury with a definitional instruction as to each of the five elements. There was a separate definitional instruction for "continuous," as well as one for "hostile." We find that Appellants failed to meet their burden of establishing how the tendered instruction misled the jury and, therefore, failed to establish any prejudice. Point two is denied.

### 4) Plain Error Review of Admission of Certain Evidence

Appellants' points three and four argue that the trial court erred in denying Appellants' Motion for New Trial because Plaintiffs' Exhibits 8 and 8A (the Kessinger Affidavit of Adverse Possession) and Ex-

hibit 9 (Kessinger Certificate and Plat of Survey) should not have been admitted as evidence, in that such exhibits were hearsay, irrelevant, and confusing, and they misled the jury into finding for Respondents by leading the jury to believe Respondents had some legal right in and to the Contested Property.

Since both of these points involve the same legal principles, we will address them together. However, as a prerequisite for our examination of the merits of Appellants' argument, we must first determine if these issues were properly preserved for appellate review.

Appellants filed a motion in limine asking the trial court to deny the admission of Exhibits 8, 8A and 9. The trial court overruled this motion and determined that the evidence was admissible. During trial, when Respondents offered each of these exhibits into evidence, Appellants' counsel affirmatively stated, "No objection."

It has been well established that claims of error cannot be considered by an appellate court unless they were properly preserved for appeal. *Wagner v. Piehler, M.D,* 879 S.W.2d 789, 793 (Mo. App.1994). Error in the admission of evidence may not be raised on appeal where no objection is made when the evidence is introduced at trial. *Kovacs v. Kovacs,* 869 S.W.2d 789, 792 (Mo.App.1994). Failure to object to the introduction of evidence at a trial preserves nothing for review. *Holtmeier v. Dayani,* 862 S.W.2d 391, 404 (Mo. App.1993). Further, a motion in limine to exclude evidence does not preserve the issue for review if no objection is made at trial when the evidence is offered. *Sooter v. Magic Lantern, Inc.,* 771 S.W.2d 359, 362 (Mo.App.1989). By itself, a motion in limine is interlocutory and will not be reviewable on appeal absent a proper objec-

tion during the course of the trial. *Wagner*, 879 S.W.2d at 792.

 Appellants admit that by not objecting they failed to preserve the issue for review and ask this Court to review the issue as plain error under Rule 84.13(c).[3] An appellate court may review an issue using plain error if it determines that a "manifest injustice" or "miscarriage of justice has resulted from plain error." *Collins v. Hertenstein*, 90 S.W.3d 87, 98 (Mo. App.2002). Plain error review assigns a greater burden to Appellants, because it is greater than prejudicial error, and it will rarely provide the basis for overturning the judgment of the trial court in civil cases. *Davolt v. Highland*, 119 S.W.3d 118, 135–36 (Mo.App.2003).

Respondents correctly argue that an announcement of "no objection" when evidence is sought to be admitted, leaves no room for even plain-error appellate review. *McCormack v. Capital Elec. Constr. Co., Inc.*, 159 S.W.3d 387, 398 (Mo.App. 2004). Even if the admission of these exhibits was erroneous, an issue we do not decide, Appellants led the trial court into this claimed error by affirmatively stating, "No objection." Now the Appellants are asking this Court to paint the trial court with error for not countermanding Appellants' stated lack of objection, *sua sponte* determining that the exhibits were not admissible in evidence, and *sua sponte* denying their admission into evidence. This we will not do. Failure to preserve an objection to the admission of evidence waives review by this Court, except for plain error review, and affirmatively announcing "no objection" waives even plain error review. We deny plain error review. Therefore, Appellants' points three and four are denied.

3. Rule 84.14(c) provides: "Plain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though

**5) Decision**

The judgment of the trial court is affirmed.

RAHMEYER, P.J., and PARRISH, J., concur.

not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."