**FARM PROPERTIES HOLDINGS, L.L.C., Appellant,**

v.

**LOWER GRASSY CREEK CEMETERY, INC., Respondent.**

No. 27826.

Missouri Court of Appeals, Southern District, Division Two.

Dec. 21, 2006.

A.M. Spradling, III, Cape Girardeau, for Appellant.

Stephen P. Gray, Marble Hill, for Respondent.

ROBERT S. BARNEY, Judge.

Farm Properties Holdings, LLC ("Appellant") appeals the trial court's amended judgment, following a non-jury trial, in favor of Lower Grassy Creek Cemetery, Inc. ("Respondent"). Appellant had filed a petition in ejectment to prevent Respondent and its members from using and possessing an established road across Appellant's property in order to access Respondent's private cemetery. As explained below, Appellant maintained in its suit that Respondent had its own dedicated strip of land giving it access to the cemetery which thereby precluded Respondent from needing to use Appellant's road to access the cemetery.

In its judgment, the trial court determined Appellant could not prevail in its suit of ejectment against Respondent. Rather, the trial court found, pursuant to section 214.132, that Respondent was entitled to access and maintain its cemetery by utilizing the existing road located on Ap-

pellant's property.[1] Now in its sole point on appeal, Appellant maintains the trial court erred as a matter of law in failing to eject Respondent from Appellant's road and in determining that Respondent had "a legal right to possess Appellant's road to access its private cemetery under [section] 214.132." Appellant asserts the trial court's ruling was in error because Respondent has an alternative access to its private cemetery by virtue of a deed to a "16½ foot strip of ground from the county road to Respondent's cemetery for the specific purpose of access to the cemetery, which provides reasonable ingress and egress for the public to visit the cemetery . . . ." We affirm.

 The standard of review in a court-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).[2] This Court will affirm the judgment of the trial court unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* " 'Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of fact can reasonably decide the case.' " *Jerry Bennett Masonry, Inc. v. Crossland Const. Co., Inc.*, 171 S.W.3d 81, 88 (Mo.App.2005) (quoting *Kenney v. Wal–Mart Stores, Inc.*, 100 S.W.3d 809, 814 (Mo. banc 2003)). "This [C]ourt views the evidence and all reasonable inferences therefrom in the light most favorable to the judgment and disregards all contrary evidence and inferences." *Dorman v. Dorman*, 91 S.W.3d 167, 169 (Mo.App.2002). Furthermore, as in all court tried civil cases, the "credibility of the witnesses and the weight to be given their testimony are matters for the trial court, which is free to believe none, part, or all of the testimony." *Norris v. Nationwide Mut. Ins. Co.*, 55 S.W.3d 366, 369 (Mo.App.2001). An appellate court not only defers to a trial court's ability to determine the witnesses' credibility, but also to its ability to choose between conflicting evidence. *In the Interest of A.H.*, 9 S.W.3d 56, 59 (Mo.App.2000). With that being said, "[a]lthough the reviewing court defers to the trial court's findings of fact, the court does not defer to the trial court's determinations of law." *Jerry Bennett Masonry, Inc.*, 171 S.W.3d at 88.

Viewing the evidence in a light most favorable to the judgment, *Dorman*, 91 S.W.3d at 169, the record reveals that Appellant owns a 360–acre farm located in Bollinger County, Missouri, through which a road runs.[3] This road, which is approximately a mile long and 30 feet wide, commences from the south at County Road 820 and runs in a northeasterly direction towards a house owned by Appellant. The road also leads to Respondent's private cemetery located on property adjacent to Appellant's property.[4]

1. All statutory references are to RSMo 2000.

2. *Murphy* interpreted the provisions of Rule 73.01(c). The provisions of that rule now appear in essentially the same form in Rule 84.13(d). All rule references are to Missouri Court Rules (2006).

3. Appellant is a limited liability company with the sole member being Carol Brown ("Ms. Brown"). The farm property was deeded to Appellant by Ms. Brown and Raymond Wolfangel ("Mr. Wolfangel") in May of 2003. Ms. Brown and Mr. Wolfangel inherited the property in 2000 from Lewis Wolfangel, who had himself acquired the property in 1972 from Carroll and Gertrude Pedigo and Abel and Irene Swan. Ms. Brown testified she does not reside on the property, but utilizes it as a "secondary residence" for hunting and fishing purposes.

4. In 1985, the land upon which the cemetery was located was officially deeded to Respondent by Lewis Wolfangel and Bobby and Betty Broadway in order "to clear up" title to the property.

The cemetery at issue, known variously as the Rea Cemetery or the Lower Grassy Creek Cemetery ("the cemetery"), has been in existence "for probably a hundred and fifty years or more ...," and contains the graves of at least sixteen veterans of the Civil War. Appellant now contends that at its property line the road becomes a private road and is no longer available for use by Respondent or anyone else to access the cemetery.

It appears that for a substantial period of time the general public has utilized the road through Appellant's farm to access the cemetery. Indeed, during the time Lewis Wolfangel owned what is now Appellant's farm, from 1972 through 2000, Respondent, its members, and the general public freely used the road to access the cemetery.

In 1984, Bobby and Betty Broadway, who own property adjoining the cemetery on the eastside, conveyed a sixteen and a half foot strip of land ("the deeded strip of land") to Respondent so that it could better access the cemetery. This deeded strip of land forks off from County Road 820 just prior to the point where the roadway crosses onto Appellant's property and leads directly to the cemetery, paralleling Appellant's already established road.

Ms. Brown testified that in 1998 her father employed an attorney to notify Respondent that he was "revok[ing] their license" to use the already established road on his property. Ms. Brown explained that after receiving this letter, Respondent and its members, nevertheless, continued to use the roadway at issue.

In 2003, Ms. Brown employed an attorney in Cape Girardeau, Missouri, to contact Respondent and "request[ ] and demand[ ] that they stop using the road...." She related that Respondent still continued to use the road after receiving the letter. Thereafter, Ms. Brown placed "no trespassing signs" on trees close to the road, but these signs were "removed repeatedly." She further testified that after she had the land and roadway surveyed someone removed the stakes and flags set out by the surveyor.

Ms. Brown also testified that use of the road is "very infrequent" and "[t]here's not a lot of traffic." She characterized Respondent's use of the road as "occasional." She also testified that there is "only one physical road" upon which people travel to the cemetery and that road is the one at issue.

Ms. Brown also related that the deeded strip of land, which forks off just prior to the point where the roadway crosses onto Appellant's property, runs parallel to the established road but is not graveled or developed. She also described it as being covered in weeds. Ms. Brown related she wants Respondent to develop the deeded strip of land to use as a roadway and to refrain from using the already established road.

Craig Brown ("Mr. Brown"), Ms. Brown's former husband, testified that he had often helped maintain the established road by replacing culverts; adding gravel; grading the road; and trimming trees. He stated that the road was used to access the cemetery on a "somewhat frequent" basis. Mr. Brown also related he had several encounters with law enforcement officers and others about the use of the road. He stated that he was informed by the police department on several occasions that the road was a public road and that he could not block it. He also related that he had encountered people hunting and trespassing on Appellant's property "under the guise of visiting the cemetery, but they happened to be in old clothes carrying firearms so I don't know what that had to do with [visiting the cemetery]." He stat-

ed that he had a problem with people using the established road to get to the cemetery because "it's just simply a disguise for them to come in ... so it just makes it too convenient to too many people to use it as a cover to come in for other purposes." He stated that he had experienced other problems with various neighbors not respecting property boundaries and "nosing around" Appellant's property. He further related he had been threatened with firearms by other property owners in the area, and that these property owners were affiliated with Respondent.

James Kirkpatrick ("Mr. Kirkpatrick"), Respondent's president, testified that he had been involved with the cemetery for a number of years; that he lived in that area; and that he had relatives buried in the cemetery. He stated that Respondent's members go to the cemetery "at least [a] couple times a month at least and mow it, clean it up, throw the branches and every Veteran's Day put flags up there for all the veterans...." He testified that Respondent's members as well as members of the general public have been "hassled a lot" by Appellant's representatives and that they have been "discouraged" from going to the cemetery.

Mr. Kirkpatrick, who was seventy-six years old at the time of trial, testified that he had traveled to the cemetery by using the existing road for seventy years. He testified that the location of the road has changed slightly over the years because of the existence of a creek on the right side of the road. He stated that the creek would overflow and wash the road out; accordingly, over time the road was slowly moved to the right. He stated this was also the reason Respondent received the deeded strip of land in 1984. Respondent was deeded the strip of land from the Broadway family so that it and its members had a way to access the cemetery on those occasions when the existing road washed out.

Mr. Kirkpatrick also testified there had never been a roadway on the deeded strip of land, and that, in fact, the land had always been farmed up to the fence line on that property. He stated that the deeded strip of land is impassable and not capable of being used as a roadway. He related such a roadway would have to pass

> through a field, trees, big trees ... [r]ight in the one area ... it's a marsh. We'd have to have two or three big culverts to take care of the drainage that comes through there. In fact, there's [a creek] that run[s] across ... here and over on this side is marsh, swamp, muddy and it would take something to try to fill it all up and make a road there.

He also stated that neither Respondent nor its members had the equipment, ability, or funds for such an undertaking.

Gene Robbins ("Mr. Robbins"), Respondent's treasurer, also has family members buried at the cemetery. Mr. Robbins was seventy-two years old at the time of trial and testified that he had been visiting the cemetery since he was twelve years old. Mr. Robbins testified that the existing road had been there his entire life. He stated that the reason Respondent obtained the deeded strip of land from the Broadway family in 1984 was because the existing road would often wash out and they wanted to make sure they would always be able to access the cemetery. Mr. Robbins testified he "had a little encounter one time" with both Mr. Brown and Lewis Wolfangel. He stated that they "tried to stop us [from using the road] just every once in a while...." Mr. Robbins testified there was no other road leading to the cemetery than the one at issue; that he felt "[i]t was a public road all [his] life until just lately they've been claiming ..." it is

not a public road; and that fifteen years ago the county graveled the road and installed a culvert on the portion of the road Appellant claims is a private road. Mr. Robbins likewise related that the deeded strip of land did not provide "reasonable access" to the cemetery, "because there's springs, a marsh and how are you going to get a bulldozer in and fix a road on 16 foot when you can't even get a bulldozer in up through there? You have a lot of rock. No, it's not reasonable access at all." Mr. Robbins stated that installing a road would be too expensive for Respondent and he did not believe the county would pay for such a road to be installed.

Frank Mesmer ("Mr. Mesmer") testified that he has owned property adjoining the cemetery for thirty years and the only roadway he has ever used is the one at issue. He stated that Respondent's deeded strip of land would not be a reasonable location to put a road because it was muddy; there was a large ditch that runs through it; and at least one culvert would have to be installed in order for it to be passable.

Michael Lilley ("Mr. Lilley") testified that he has owned land adjoining the cemetery since 1998. He stated that on one occasion in 2003 he was taking his mother to the cemetery on an all-terrain vehicle when he "was run down by the Browns and told to get off the road and [Mr. Brown] was carrying a gun . . . ." Mr. Lilley stated that in order to build a road on the deeded strip of land it would take a great deal of money because of the marsh and other obstacles on the land. He also related "that road has been there forever. It's been a public road forever." Mr. Lilley also admitted that he had taken down Ms. Brown's no trespassing signs on more than six occasions.

Deputy Cheryl Malone ("Deputy Malone") of the Bollinger County Sheriff's Department testified that she was called to the area in question to investigate a complaint filed by Ms. Brown regarding the removal of the no trespassing signs. She testified that she had driven the road on Appellant's property in her patrol unit and that it was the only maintained road leading to the cemetery. She stated she went to the location where the deeded strip of land intersects with the county road and "it looked like an old field entrance into a creek bed and into a field." She stated there was no evidence of another road leading to the cemetery and that there looked like a tractor might have traveled up the deeded strip of land "a time or two but . . ." there was no road on that piece of land. She found "[t]here is no other way for them to get to that cemetery" other than the existing roadway.

At the close of the evidence, the trial court took the matter under advisement until it could personally visit the area at issue.[5] On June 8, 2006, the trial court entered its "Amended Judgment." In its judgment, the trial court found that "[a]lthough [Respondent] was granted [the deeded strip of land] for a roadway . . . there is no actual roadway to the cemetery other than the [existing] roadway." The trial court found that Respondent had created a road

> only along the last few feet where it departs from [Appellant's] roadway and enters the cemetery. The remainder of the roadway granted to [Respondent] exists only on the survey. That imaginary roadway is drawn through a real and impassable bog and directly under a real and impenetrable line of substantial trees. No vehicle could pass along the 'roadway' granted to [Respondent] nor could any individual force his way

5. Neither party objected to the trial court visiting the area in question.

through that way except with a degree of exertion one could not expect of cemetery visitors. Therefore, the Court finds that there is no public ingress or egress available to the Lower Grassy Creek Cemetery and that the only ingress and egress is by means of [Appellant's existing] road. § 214.132 RSMo. The Court further finds that [Respondent's] witnesses' uses of [Appellant's] road occurred during reasonable hours and that their use was for the purpose of visiting and maintaining the cemetery which are 'purposes usually associated with cemetery visits' as set out in [section] 214.132....

Additionally, the trial court noted the actions about which Appellant was complaining were not entirely attributable to Respondent. The trial court stated that "[c]ertainly [Respondent] is not culpable for the acts of anonymous trespassing and vandalism complained of so vehemently by [Appellant's] witnesses." The trial court also set out that "[i]n any event, a judgment against [Respondent] would be all but pointless because members of the public would still be entitled to visit and maintain the cemetery by means of [Appellant's] road" under section 214.132.

Ultimately, the trial court found Appellant was not entitled to recover in its action for ejectment because it failed to prove that Respondent "retained possession of the property under no valid right." The court also noted that Appellant failed to present any evidence that Respondent "'was in possession of the premises claimed' at the time the action was commenced" in that Respondent "did not take or claim control of the road ... did not commit any part of the road to use for burials or markers ... [and] did not deny [Appellant] use of the road." As such, "[w]hatever use [Respondent] may have made of the road was not 'without valid right' but was legitimized by [section] 214.132...." The trial court then ruled in favor of Respondent and against Appellant. This appeal by Appellant followed.

■ "A *prima facie* case for ejectment can be established ... by showing: (1) proof of title in the plaintiff; and (2) defendant's retention of possession of said property under no valid right after a demand for surrender has been made." *Hearod v. Baggs*, 169 S.W.3d 198, 203 (Mo.App.2005); *see also* § 524.080.[6]

■ In the present matter, it is undisputed that Appellant owned the land upon which the road in question was located. As such, we concern ourselves only with the issue of whether Respondent retained "possession of said property under no valid right...." *Hearod*, 169 S.W.3d at 203.

Possession is defined as the detention and control, or the manual or ideal custody, of anything which may be the subject of property, for one's use and enjoyment, either as owner or as the proprietor of a qualified right in it, and either held personally or by another who exercises it in one's place and name. A person who knowingly has direct physical control over a thing, at a given time, is in actual possession of it. A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.

---

6. Section 524.080 sets out that a plaintiff must show "that, at the time of the commencement of the action, the defendant was in possession of the premises claimed, and that the plaintiff had such right to the possession thereof as is declared by this chapter to be sufficient to maintain the action."

*Allen v. Welch,* 770 S.W.2d 521, 522 n. 1 (Mo.App.1989). "Further, the remedy in a successful ejectment action would be, as the name implies, the removal of defendants from plaintiffs' land. It is axiomatic that, if defendants are not in possession of the premises in dispute, it would be impossible to eject them from that property." *Id.* at 523.

■ Here, there is little evidence that Respondent's use of the established road amounted to it being in possession of Appellant's land under section 524.080. *See id.* at 522 n. 1. Ms. Brown testified that use of the road by anyone was "very infrequent;" that "[t]here's not a lot of traffic" on the road; and that Respondent's actual use of the road was "occasional." Mr. Brown also testified the road was used to access the cemetery by Respondent and members of the public on a "somewhat frequent" basis. Mr. Kirkpatrick likewise testified that Respondent's members go to the cemetery via the road "at least [a] couple times a month at least and mow it, clean it up, throw the branches and every Veteran's Day ...." Appellant did not meet the burden of proof required by section 524.080. Accordingly, the trial court did not err in denying Appellant's petition for ejectment.

■ Additionally, we also find the trial court did not err in finding that, regardless of the validity of Appellant's petition for ejectment, pursuant to section 214.132, "members of the public would still be entitled to visit and maintain the cemetery by means of [Appellant's] road." [7] Section 214.132.1 sets out:

> [a]ny person who wishes to visit an abandoned family cemetery or private burying ground which is completely surrounded by privately owned land, for which no public ingress or egress is available, shall have the right to reasonable ingress or egress for the purpose of visiting such cemetery. This right of access to such cemeteries extends only to visitation during reasonable hours and only for purposes usually associated with cemetery visits.

As stated above, there was evidence that the cemetery is over a hundred years old; the roadway at issue had been used to access the cemetery since at least 1930; and Appellant's predecessor in interest had specifically allowed the roadway to be used to access the cemetery. Further, there was testimony at trial from Mr. Kirkpatrick, Mr. Robbins, Mr. Mesmer, Mr. Lilley, and Deputy Malone that there was no other practical and unobstructed roadway for people to access the cemetery,

---

7. Appellant asserts that because section 214.132 has never been addressed and interpreted in a Missouri case this Court should look at "[section] 228.342 ... and the cases interpreting that statute, dealing with the establishment of a private road by [strict] necessity, [for] guidance and a legal basis for ruling on this case." This Court disagrees with Appellant's assertion that statutory construction is necessary in the present matter. This is because the " 'primary rule of statutory interpretation requires this Court to ascertain the intent of the legislature by considering the language used while giving the words used in the statute their plain and ordinary meaning.' " *Stith v. Lakin,* 129 S.W.3d 912, 917 (Mo.App.2004) (quoting *Benoit v. Missouri*

*Highway & Transp. Comm'n,* 33 S.W.3d 663, 673 (Mo.App.2000)). When the language of a statute is clear and unambiguous, there is no room for statutory construction. *Freeman Health System v. Wass,* 124 S.W.3d 504, 509 (Mo.App.2004). "Where a statute uses words which have a definite and well known meaning at common law it will be presumed that the terms are used in the sense in which they were understood at common law, and they will be so construed unless it clearly appears that it was not so intended." *Estate of Griffitts,* 938 S.W.2d 621, 624 (Mo.App.1997).

This Court finds nothing in its plain reading of the unambiguous language of section 214.132 to suggest that statutory interpretation is necessary in the present matter.

other than by using the established road through Appellant's land. Additionally, after visiting the area itself, the trial court found "that there is no public ingress or egress available to the Lower Grassy Creek Cemetery and that the only ingress and egress is by means of [Appellant's] road." Likewise, there was evidence at trial that Respondent's members and the public at large were using the roadway infrequently and "for purposes usually associated with cemetery visits." *See* § 214.132.

Based on the foregoing, there was substantial evidence to support the trial court's judgment denying Appellant's petition for ejectment and finding that section 214.132 is applicable to the present matter. Point denied.

The judgment of the trial court is affirmed.

GARRISON, J., and BATES, C.J., concur.