William G. BOWLES, Sr., William G. Bowles, Jr., and Martha Spencer Bowles, Plaintiffs–Respondents,

v.

Cynthia Anne McKEON, f/k/a Cynthia Anne Morgan, Defendant–Appellant.

No. 27548.

Missouri Court of Appeals,
Southern District,
Division Two.

March 28, 2007.

Daniel E. Leslie, Union, for Appellant.

William E. Hickle, The Hickle Law Firm, L.L.C., Rolla, for Respondents.

PHILLIP R. GARRISON, Judge.

William G. Bowles, Jr. and his wife, Martha Spencer Bowles (collectively referred to as "Plaintiffs") filed a three-count petition to quiet title, for a permanent injunction, and for trespass.[1] The subject property is 0.08 acres (the "disputed property") located between Plaintiffs' 153–acre farm ("the farm") and six to eight acres owned by Cynthia Anne McKeon ("Defendant"). The trial court entered judgment in favor of Plaintiffs on all three counts. Defendant now appeals.

In March 1939, J.H. Hughes and J.M. Hughes, husband and wife, obtained title to the farm, and on July 14, 1972, transferred this title to their son, Joseph Dale Hughes ("Dale") and his wife, Catherine Ann Hughes ("Catherine") (collectively referred to as "the Hughes"). The Hughes owned and lived on the farm until April 24, 1998, when they conveyed it to Rodney Felton and Vickie Felton (collectively referred to as "the Feltons"), husband and wife. On June 19, 1998, the Feltons transferred title to the farm to David Goldsmith. David Goldsmith then transferred title to Plaintiffs on July 31, 2001. On November 5, 2001, Plaintiffs conveyed the farm to William George Bowles, Sr., who then conveyed the farm back to Plaintiffs in December 2002.

The disputed property lies between two parcels of land with the farm to its east and six to eight acres, purchased by Defendant on March 31, 1999, to its west. It is bordered on its south by Highway 72 and consists of a driveway that operates as sole access to the farm. It has a fence on

---

1. While technically William G. Bowles, Sr. is a plaintiff in this case he currently has no interest in any of the property. As such, he is not included when we refer to Plaintiffs.

the east and west sides and contains two entrances, a cattle guard and a wooden gate. Sometime after Plaintiffs purchased the farm, a dispute arose between the parties as to the ownership of the disputed property.

At one point, without prior notice to Plaintiffs, Defendant's husband bulldozed the west boundary fence to the disputed property. That fence had been erected by the previous owner of the farm. Defendant's husband also had the bulldozer place a boulder in the driveway which prevented Plaintiffs from entering through the wooden gate. This forced the Plaintiffs to use the old wooden cattle guard entrance to their property that was "not in very good shape," and, which ultimately collapsed as they were driving over it. Plaintiffs eventually moved the boulder blocking the driveway with a nine foot pry bar so that they could enter and leave their property via the wooden gate.

On November 21, 2001, Plaintiffs filed a petition in the Dent County Circuit Court for a temporary restraining order, preliminary injunction, and permanent injunction against Defendant. Subsequently, a first amended petition was filed to quiet title, for a permanent injunction, and for trespass. Defendant filed a counterclaim for ejectment. The trial court heard the evidence and entered its judgment for Plaintiffs, quieting title to the disputed property; permanently enjoining Defendant, her successors, assigns, agents, employees or others acting on her behalf from interfering in any way with Plaintiffs' use and ownership of real property, and ordering her to immediately remove herself or any of her property or possessions located on the disputed property; and in favor of Plaintiffs on the trespass claim, but awarded no actual or punitive damages. It did not specifically enter judgment on the counterclaim.

Defendant, on November 17, 2005, filed a motion for new trial or, in the alternative, to amend the judgment. No action was taken on this motion by the trial court and it was denied by operation of law. Defendant now appeals.

■ Before we address the merits of the appeal we must determine whether we have jurisdiction to hear this appeal. Both Plaintiffs and Defendant have briefed the issue of whether or not the judgment of the trial court is a final one from which an appeal can be taken.

As indicated, Plaintiffs filed a petition alleging three counts, to quiet title, obtain a permanent injunction, and for trespass, relating to the disputed property. In response, the Defendant filed a counterclaim for ejectment. In issuing its judgment, the trial court expressly found for Plaintiffs in the three counts in their petition but did not dispose of Defendant's counterclaim, and there was not "an express determination that there is no just reason for delay" as authorized by Rule 74.01(b).[2]

■ Ordinarily, for a judgment to be final it must dispose of all parties and issues in the case and if a counterclaim is pleaded and submitted a finding must be made disposing of the counterclaim. *See Jack Brandt, Ltd. v. Morris*, 400 S.W.2d 417, 418 (Mo.1966); *Todd v. St. Ann's School of Music Service, Inc.*, 585 S.W.2d 522, 524–25 (Mo.App. E.D.1979).

However, an exception to this general rule exists when "finding for a plaintiff necessarily carries with it a finding against the defendant on the defendant's counterclaim." *Wright v. Martin*, 674 S.W.2d 238, 240 (Mo.App. S.D.1984). In these cases the judgment contains an implicit ruling

---

**2.** All references to rules are to Missouri Rules of Civil Procedure (2005).

against the defendant on his counterclaim and the judgment is deemed final and appealable. *Podlesak v. Wesley*, 849 S.W.2d 728, 730 (Mo.App. S.D.1993).

This case fits within this exception. For Defendant to be successful on her claim for ejectment she would need to show that she was in possession of the disputed property and had the right of possession. *Elton v. Davis*, 123 S.W.3d 205, 213 (Mo.App. W.D.2003). In finding for Plaintiffs on all three counts, the trial court found that Plaintiffs had proven adverse possession and quieted title in them, permanently enjoined Defendant from interfering with Plaintiffs' use and enjoyment of the disputed property, and found that Defendant had trespassed on the disputed property. Implicit in this finding is the trial court's determination that Defendant did not and does not have a right of possession in the disputed property. Under these circumstances the trial court's judgment implicitly rejected Defendant's counterclaim and the judgment is final and appealable.[3]

■ Defendant's sole point on appeal is that there is no substantial evidence to support the trial court's finding that Plaintiffs had met the required elements necessary to prove adverse possession and, therefore, it erred in entering a judgment against her.

■ We will affirm the judgment of the trial court in a court-tried case unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Farm Properties Holdings, L.L.C. v. Lower Grassy Creek Cemetery, Inc.*, 208 S.W.3d 922, 924 (Mo.App. S.D.2006). "Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of fact can reasonably

decide the case." *Id.* (internal citations and quotations omitted). In applying this standard we defer to the trial court's credibility determinations and view the evidence and permissible inferences in the light most favorable to the judgment, disregarding all contrary evidence and inferences. *Williams v. Frymire*, 186 S.W.3d 912, 916 (Mo.App. S.D.2006). The trial court is in a better position to judge the credibility of the parties and, as such, is free to believe none, part, or all of any witness's testimony. *Id.*

Section 516.010[4] states:

No action for the recovery of lands, tenements or hereditaments, or for the recovery of the possession thereof, shall be commenced, had or maintained by any person ... unless it appear that the plaintiff, his ancestor, predecessor, grantor or other person under whom he claims was seized or possessed of the premises in question, within ten years before the commencement of such action.

■ Under this statute, a party claiming ownership by adverse possession must prove that his or her possession was: (1) hostile, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous for a ten-year period prior to the commencement of the action. *Martens v. White*, 195 S.W.3d 548, 554 (Mo.App. S.D.2006). Plaintiffs had the burden to prove each element and failure to prove even one element will result in denial of their adverse possession claim. *Casteel v. Yeary*, 77 S.W.3d 127, 129–130 (Mo.App. S.D.2002).

Defendant claims that there is no substantial evidence to support any of the mandatory five elements. We disagree and address each element individually.

---

**3.** Plaintiffs' motion to dismiss the appeal is overruled.

**4.** All references to statutes are to RSMo (2000) unless otherwise indicated.

For possession to be "hostile" it must "be opposed and antagonistic to the claims of all others, i.e., the claimant must occupy the land with the intent to possess it as his own and not in subservience to a recognized, superior claim of another." *Harness v. Wallace*, 167 S.W.3d 288, 291 (Mo.App. S.D.2005) (quoting *Teson v. Vasquez*, 561 S.W.2d 119, 127 (Mo.App.St. L.Dist.1977)). An individual's intent may be inferred from his or her acts of dominion over the land. *Martens*, 195 S.W.3d at 555. The intent need not be to "take away something which belongs to another and the possessor may even be indifferent as to the facts of legal title." *Williams*, 186 S.W.3d at 919 (quoting *City of South Greenfield v. Cagle*, 591 S.W.2d 156, 160 (Mo.App. S.D.1979)).

Plaintiffs' evidence of ownership by adverse possession included the testimonies of the Hughes. Dale testified that he was born the same month and year that his parents purchased the farm. He lived on the farm from the time he was about five years old until he left home after high school. Dale and Catherine, purchased the farm from his parents and lived there for approximately thirty-five years. He testified that the driveway and entryways on the disputed property were, and always have been, the only way onto the farm. When he was in high school Dale built the cattle guard on the disputed property as part of his high school FFA project. When Dale and Catherine purchased the farm the cattle guard had been in existence for a number of years and was not in good condition, so Dale repaired it.

He also testified that there had always been a fence on the disputed property. When he was growing up, the fence line actually went further into the adjacent property. However, when some trees died he straightened the fence out and it has been where it is today for around forty years. Dale repaired the fence many times when he was living there.

The driveway itself was made up of gravel and gravel roads have a tendency to get a hump in them over a period of time. In order to fix the hump and maintain the driveway, Dale would grade over the gravel driveway. Dale never asked permission to use the disputed property and he did not remember his parents asking for permission. In fact, Dale's parents and the Hughes always thought the disputed property was theirs. These actions demonstrate the Hughes' intent to occupy and treat the disputed property as their own and in defiance of and antagonistic to anyone else's rights.

"Actual possession is the present ability to control the land and the intent to exclude others from such control." *Martens*, 195 S.W.3d at 555. The type of actions that will characterize possession as "actual" depend upon "the nature and location of the property, the uses to which it can be applied and all the facts and circumstances of a particular case." *Id.* (quoting *City of South Greenfield*, 591 S.W.2d at 160.) The testimony of the Hughes proving that their possession was hostile also shows their possession was actual.

Open and notorious possession is demonstrated by showing that the occupancy on the disputed property was conspicuous, widely recognized, and commonly known. *Williams*, 186 S.W.3d at 920. This requirement exists to ensure that the legal owner had cause to know of the adverse claim of ownership by another. *Id.* The disputed property was access to the farm off of and adjacent to Highway 72. People who came to visit the farm used the driveway on the disputed property. The Hughes brought cattle into the farm via the disputed property.

Ken Fiebelman, born in and currently a resident of Dent County, testified that the entrance to the farm off of Highway 72 has always been the same entrance and that they always entered the farm using the entrance and driveway on the disputed property. Being close to Highway 72 and being used by other individuals when visiting the farm shows that the Hughes' possession of the disputed property was conspicuous and widely recognized. The possession therefore was open and notorious.

In order for possession to be exclusive the individual occupying the disputed property must have held the land for himself and not for another. *Martens,* 195 S.W.3d at 556. The legal owner must have been "wholly excluded" during the ten-year statutory period. *Id.* "However, sporadic use, temporary presence, or permissive visits by others, including the record owner, will not defeat the exclusive element." *Id.*

Dale was asked who used the entryway on the disputed property while he lived on the farm. He answered, "Just me, people coming and going to visit us or family and friends." This, along with the testimony proving the other elements, is sufficient to prove that the Hughes' possession was exclusive.

Finally, "[a]dverse possession must be continuous for a period of ten years, which means without lapse and uninterrupted for the statutory period." *Harness,* 167 S.W.3d at 292. The evidence and testimony of the Hughes reveals that they lived on the farm for around thirty-five continuous years. Throughout this time they used the disputed property to access the farm. This evidence shows that the Hughes' adversely possessed the disputed property without lapse and uninterrupted for a continuous period of ten years.

Defendant argues that because Plaintiffs did not offer evidence or testimony showing that the Feltons and David Goldsmith, who owned the farm from April 24, 1998, until July 31, 2001, adversely possessed the disputed property they did not meet their standard of proof. However, Plaintiffs did show that by April 24, 1998, the title to the disputed property had already vested with the Hughes by adverse possession.

While the ten years of possession needs to be consecutive, uninterrupted and without lapse, they need not immediately precede the date of the suit to quiet title. *Martens,* 195 S.W.3d at 556. "Title to the property will vest in the adverse possessor when the ten-year period lapses." *Casteel,* 77 S.W.3d at 130.

Therefore, Plaintiffs offered substantial evidence proving that the Hughes, their predecessor in title, had met the five elements of adverse possession. Defendant's point is denied.

The judgment of the trial court is affirmed.[5]

Barney, J., and Lynch, J., concur.

---

**5.** Based upon the evidence before the trial court it is clear that legal title to the disputed property had vested with the Hughes by April 24, 1998. Whether their subsequent transfer of the farm to the Feltons (and all subsequent transfers) included the disputed property, either expressly in the legal description or impliedly by the intention of the parties to include the disputed property, is not an issue on this appeal. *See Lurvey v. Burrell,* 317 S.W.2d

458 (Mo.1958); *Johnson County Post No. 2513, Veterans of Foreign Wars, Inc. v. Jack-son,* 519 S.W.2d 335 (Mo.App.K.C.Dist.1975).